IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

BARRY MCPHERSON,

    Plaintiff,

v.                                No. 03-2006 B

FEDERAL EXPRESS CORPORATION,

    Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DISMISSING CASE

---

This action has been brought by the Plaintiff, Barry McPherson, against the Defendant, Federal Express Corporation ("FedEx"), alleging violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, et seq., and the Tennessee Human Rights Act (the "THRA"), Tennessee Code Annotated § 4-21-101, et seq. Before the Court is the Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Rule provides in pertinent part that a

> ... judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the motion is supported by

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 11-9-05



documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S.Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

The facts of this case material to the Court's determination, viewed in the light most favorable to the Plaintiff, are as follows. McPherson began working for the Defendant in approximately 1985 as a material handler in its Memphis, Tennessee hub. During his employment, he was promoted and transferred to other locations, including Washington, D.C. While in Washington, the Plaintiff was diagnosed with diabetes mellitus. In 1994, McPherson returned to the Memphis hub as a manager. Since his blood sugar had not been brought under control, his physician in Memphis prescribed insulin injections. The treatment failed to control McPherson's diabetes and he was hospitalized on at least one occasion. On August 28, 2001, the Plaintiff requested and was granted a medical leave of absence for short-term disability. He has attached to his response to the dispositive motion doctor excuse forms from his family physician and endocrinology specialist dated August 28, 2001 and thereafter stating that he was unable to return to work for the period indicated thereon because of medical problems.

According to Dr. James A. Moore, the Plaintiff's family doctor, he first examined McPherson

2

around February 2001. (Pl. Barry McPherson's Mem. in Opp'n to Def.'s Mot. for Summ. J., Attachment (Dep. of James A. Moore ("Moore Dep.") at 8-9.)) At that time, the Plaintiff's A-1-C[1] was 11.4 while it should have been around 6.0, reflecting that his diabetes was out of control. (Moore Dep. at 11.) Dr. Moore related that, according to the medical records, McPherson's diabetes had "been under control occasionally, but [was] mostly out of control." (Moore Dep. at 12.) When asked whether the Plaintiff's diabetic condition kept him from working, the physician replied that he did not see any indication thereof in the chart, and recalling that McPherson was "sent to the emergency room once in September of 2001 because [the diabetes] was so far out of control." (Moore Dep. at 12.) The doctor reported that there was never a time during his treatment of the Plaintiff that the diabetes was under sufficient control to permit him to stop injecting insulin because his condition was so "severe" that oral medications were ineffective. (Moore Dep. at 13-14.) Moore was aware his patient worked at FedEx and assumed his work involved handling packages; he denied knowledge that McPherson held a second job. (Moore Dep. at 13.) The physician stated that it was his belief the Plaintiff may not have been taking his condition seriously based on his failure to keep appointments. (Moore Dep. at 17.) In fact, in January 2005, Moore made a notation in the Plaintiff's chart that he wanted better compliance and that he was considering asking the patient to find another doctor if that did not occur. (Moore Dep. at 17.) At that time, McPherson's blood sugar, at 452, was out of control. (Moore Dep. at 19.) Moore assumed, however, that McPherson continued to take his insulin injections. (Moore Dep. at 17.)

When asked under what types of conditions a diabetic would be restricted from working, the

---

[1] An A-1-C test reflects the average blood sugar level over a period of about six weeks. (Moore Dep. at 11.)

3

physician articulated as follows:

> There are all kind of complications to diabetes that would do that. With a diabetic, also, you get -- can go into a coma from high blood sugar or low blood sugar, either one, and that would naturally restrict you. Ordinarily, as long as -- some people feel pretty good if their blood sugar is high or if it gets low, you're taking too much insulin, you get fainty. But that doesn't happen in higher. When it gets real high, that's when it starts doing damage to the body, but you don't feel it until something drastic happens. Or if it gets real bad, you can go into what you call a diabetic acidosis, and then you get fairly sick. As far as the record, I don't think he's ever gone into that condition, as far as according to the records.

(Moore Dep. at 21-22.) He testified that "no restriction [on his ability to work would be necessary] until some of these problems pop up from the sugar being so high. But the problem with diabetes, you can function when the sugar is high, unless it gets real high and you go into acidosis." (Moore Dep. at 31.) Moore described how a person would feel who had blood sugar levels similar to the Plaintiff's thusly:

> Well, a lot of times the patient doesn't feel much of anything. You know, if they're feeling well, that's the dangerous part of it because [] a patient doesn't feel it. But if the sugar is high, then it can be doing damage that can lead to heart attacks and strokes and that's the reason we like to have the patient come in at regular intervals so we can keep it -- make sure it stays down so it won't cause damage. If he doesn't, diabetes out of control causes hardening of arteries, arthrosclerosis is deposits of fat into the arteries which can lead to early strokes and early heart attacks.

(Moore Dep. at 23-24.)

He recalled that the Plaintiff's work restrictions during 2001 were primarily for his hospitalizations, during which his doctor attempted to get his diabetes under control. (Moore Dep. at 22-23.) Others were based on the instability of his condition and Moore's opinion that he "needed to stay home and take care of it better for awhile." (Moore Dep. at 27.) Sometime in 2001, Moore referred McPherson to an endocrinologist based on his inability to bring the blood sugar levels down. (Moore Dep. at 26.) The last time Moore examined McPherson in January 2005, there was nothing

4

about his condition that restricted him from working. (Moore Dep. at 22.)

Endocrinologist Dr. Lakshmi Krishnamurthi recalled beginning his treatment of the Plaintiff on October 2, 2001. (Pl. Barry McPherson's Mem. in Opp'n to Def.'s Mot. for Summ. J., Attachment (Dep. of Lakshmi Krishnamurthi, M.D. ("Krishnamurthi Dep.") at 18.)) Upon examination, the physician noted that McPherson's blood sugar was high and that the patient reported fatigue, frequent urination, and trouble seeing. (Krishnamurthi Dep. at 9-10, 28-29.) Krishnamurthi, characterizing the Plaintiff as being at that time "moderately sick," adjusted his insulin dose. (Krishnamurthi Dep. at 9-10.) Because McPherson told him he was tired and could not go to work, the doctor issued a work excuse form. (Krishnamurthi Dep. at 10.) His treatment of the Plaintiff continued for four or five weeks, during which McPherson's condition improved enough that he could return to work. (Krishnamurthi Dep. at 16-17.) The specialist saw the Plaintiff for the last time on November 1, 2001. As his blood sugar, neuropathy[2] and vision were improving, Krishnamurthi released him to return to work around the beginning of December. (Krishnamurthi Dep. at 20-21, 25.) McPherson cancelled his follow-up appointment scheduled for December 6, 2001. (Krishnamurthi Dep. at 25.)

In a letter dated March 25, 2002 addressed to the Equal Employment Opportunity Commission (the "EEOC"), Dr. Krishnamurthi advised that

> Mr. McPherson's diabetes was out of control. Blood sugars in my office on October 2, 2001 was 384 two hours after meal. His blood sugar readings were high around 400-500 as per patient. He was feeling fatigued and had dizziness. Hence I asked him to be off work for 3-4 weeks.

---

[2]Neuropathy, nerve damage common in diabetics whose blood sugar is not under control, often causes pain, a burning sensation or cramps in the lower extremeties. (Krishnamurthi Dep. at 36.)

5

> His blood sugar was still out of control; fasting blood sugar was 370; patient still continued To [sic] feel weak. Hence I didn't feel that he could go back to work and I advised him to be off work for 2-3 weeks.

(Pl. Barry McPherson's Mem. in Opp'n to Def.'s Mot. for Summ. J., Attachment.)

FedEx's attendance policy in force at the time provided that

> [e]mployees who are absent for 2 consecutive work days without notifying their manager or another member of management in their work area are considered to have terminated their employment. In addition, employees who are unavailable for work for 2 consecutive days even though they advise their manager/management of their unavailability are also considered to have terminated if the reason for their absence is unacceptable. These terminations are classified as "voluntary resignation."

(Mem. of Facts and Law on Behalf of Def. Fed. Exp. Corp. in Supp. of Mot. for Summ. J., Ex. 1 (Dep. of Barry K. McPherson) at Ex. 1 (The People Manual 1-20 Attendance (the "People Manual")) at p. 2.) The policy further stated that

> [e]mployees who are absent due to injury or illness must, when requested, furnish a physician's statement . . . indicating the reason for their absence. Employees who refuse to provide these documents when requested may be denied medical absence pay and could receive disciplinary action.

(People Manual at p. 1.) Fred Jacobs, McPherson's supervisor, sent letters to the Plaintiff warning him that his alleged failures to provide documentation to support his continued medical leave could be fatal to his future employment with FedEx. McPherson insists he was in full compliance with the attendance policy. Jacobs also advised the Plaintiff that he had heard McPherson was "moonlighting" at another company during his medical leave, a charge the Plaintiff does not deny. When McPherson failed to communicate with Jacobs as required in his correspondence, he was terminated by letter on October 22, 2001. A charge filed by the Plaintiff with the EEOC resulted in the issuance of a reasonable cause letter, in which the agency concluded that "the evidence obtained during [its] investigation establishes a violation of the statute in that [FedEx] discharged

6

[McPherson] because of his disability." (Pl. Barry McPherson's Mem. in Opp'n to Def.'s Mot. for Summ. J., Attachment.) At the outset, the Court recognizes that it is not bound by the cause determination issued by the EEOC. See Dorn v. General Motors Corp., 131 F.App'x 462, 471 (6th Cir. 2005), cert. denied, ___ S.Ct. ___, 2005 WL 2493922, 74 U.S.L.W. 3108 (U.S. Oct. 11, 2005) (No. 05-177) (district court not bound by EEOC cause determination).

The ADA prohibits covered entities, including private employers like FedEx, from discriminating against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a); Sutton v. United Airlines, Inc., 527 U.S. 471, 477-78, 119 S.Ct. 2139, 2144, 144 L.Ed.2d 450 (1999). "Unlawful discrimination includes firing an individual because of his disability." Moorer v. Baptist Mem'l Health Care Sys., 398 F.3d 469, 479 (6th Cir. 2005), reh'g en banc denied (Apr. 15, 2005) (citing 42 U.S.C. § 12112(a)). "The prima facie case of disability discrimination requires the plaintiff to prove that: (1) he is an individual with a disability; (2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodations; and (3) he was discharged solely by reason of his handicap." Williams v. London Util. Comm'n, 375 F.3d 424, 428 (6th Cir. 2004) (citations and internal quotation marks omitted). "If the plaintiff can prove a prima facie case, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination. Then, the burden shifts back to the plaintiff to prove that the stated reasons are pretext."[3] Id. However, the ultimate burden of proof remains at all times with the plaintiff. Brenneman v. MedCentral Health Sys., 366 F.3d 412, 418

---

[3] As the Tennessee courts look to the ADA for guidance, the Court will apply federal ADA law to the Plaintiff's THRA claim. See Dunn v. Sharp Mfg. Co. of Am., No. 01-2679 Ma/V, 2003 WL 1793038, at *3 (W.D. Tenn. Jan. 10, 2003) (citing Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 706 (Tenn. 2000)). Thus, the Court need not engage in a separate analysis of the Plaintiff's claims under the state statute.

7

(6th Cir. 2004), cert. denied, ___ U.S. ___, 125 S.Ct. 1300, 161 L.Ed.2d 107 (2005).

In the instant motion, the Defendant argues that McPherson has failed to establish any of the elements of the prima facie case; that it had a legitimate, non-discriminatory reason for terminating him; and that the proffered reason was not based on pretext. However, as it is dispositive, the Court will focus only on the first element of the prima facie case.

An ADA plaintiff may prove discrimination based upon his disability either through direct or indirect evidence. Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 452 (6th Cir.), cert. denied, ___ U.S. ___, 125 S.Ct. 68, 160 L.Ed.2d 25 (2004). Both require the plaintiff to show he is disabled. Id. at 452-53. Under the statute, the term "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 193, 122 S.Ct. 681, 689, 151 L.Ed.2d 615 (2002). In Sutton, the Supreme Court cautioned that a disability "exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken." Sutton, 527 U.S. at 482, 119 S.Ct. at 2146. Whether a plaintiff has a disability as defined by the ADA is an individualized inquiry. Id. at 483, 119 S.Ct. at 2147. An individual must "offer evidence that the extent of the limitation caused by [his] impairment in terms of [his] own experience is substantial." Toyota Motor Mfg., 534 U.S. at 185, 122 S.Ct. at 685. In Toyota Motor Manufacturing, the Supreme Court instructed that the standard for qualifying as "disabled" under the ADA was a demanding one to be interpreted strictly. Id. at 197, 122 S.Ct. at 691.

There is no dispute that McPherson is an insulin dependent diabetic. However, "[m]erely

8

having an impairment does not make one disabled for purposes of the ADA." Id. at 195, 122 S.Ct. at 690. Specifically, the Court made clear in Sutton that diabetes is not in itself a disability. Sutton, 527 U.S. at 483, 119 S.Ct. at 2147; see also Salim v. MGM Grand Detroit, L.L.C., 106 F.App'x 454, 458 (6th Cir. 2004) (to avoid summary judgment, insulin dependent diabetic had to show more than a physical impairment). In determining whether a finding of disability is appropriate, it is proper to consider the effect of mitigating factors, such as medications and insulin, necessary to control the disease. Fraser v. Goodale, 342 F.3d 1032, 1038-39 (9th Cir. 2003), cert. denied sub nom. U.S. Bancorp v. Fraser, 541 U.S. 937, 124 S.Ct. 1663, 158 L.Ed.2d 358 (2004).

According to the Plaintiff, his diabetes substantially limits the major life activities of eating, self-care and seeing. The Court will consider each seriatim. It has been held, generally speaking at least, that eating is a major life activity. See Lawson v. CSX Transp., Inc., 245 F.3d 916, 923-24 (7th Cir. 2001). However, to obtain relief under the ADA, the Plaintiff must show that he is *substantially limited* in that area. In order to be "substantially limited," "an individual must have an impairment that prevents or severely restricts" him from performing daily activities. Toyota Motor Mfg., 534 U.S. at 198, 122 S.Ct. at 691. He must be "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii); see also Fraser, 342 F.3d at 1040. It is not sufficient to suffer *some* limit. Fraser, 342 F.3d at 1040. In addition, the impact of the impairment must be "permanent or long term." Toyota Motor Mfg., 534 U.S. at 198, 122 S.Ct. at 691. Episodic symptoms, even if severe, do not constitute a substantial limitation. See Burrell v. Cummins Great Plains, Inc., 324 F.Supp.2d 1000, 1014-15 (S.D. Iowa 2004) (insulin dependent

9

diabetic not substantially limited where limitations occurred only during periods when his blood sugar was too low).

McPherson has pointed to nothing in the record concerning diet restrictions prescribed by his physicians. Nor has he offered any evidence to suggest that his ability to eat is substantially limited. While diabetes affects an individual's dietary needs, the mere diagnosis does not absolve a plaintiff of the obligation to establish a substantial limitation in the activity of eating if he is to survive summary judgment. See Toyota Motor Mfg., 534 U.S. at 195, 122 S.Ct. at 690; Sutton, 527 U.S. at 482, 119 S.Ct. at 2146. Harris v. Challenger Motor Freight, Inc., No. 3:98CV7288, 1999 WL 1489819 (N.D. Ohio Dec. 10, 1999), aff'd, 22 F.App'x 606 (6th Cir. 2001) is illustrative. In Harris, the diabetic ADA plaintiff argued that he was informed by his doctor that failure to adhere to a strict eating schedule could endanger his life. Harris, 1999 WL 1489819, at *9. Nonetheless, the court found that, where there was no record evidence that the plaintiff was not able to adhere to that schedule, no major life activity was impaired and, thus, he was not disabled. Id.

Self-care and seeing are also "major life activities" under the ADA. Toyota Motor Mfg., 534 U.S. at 195, 122 S.Ct. at 690; EEOC v. United Parcel Serv., Inc., 249 F.3d 557, 562 (6th Cir. 2001), cert. denied, 535 U.S. 904, 122 S.Ct. 1203, 152 L.Ed.2d 141 (2002). Again, the Plaintiff has failed to point to evidence demonstrating that he was substantially limited in the areas of self-care and vision. Simply asking the Court to assume this to be true based solely upon the fact that his blood sugar levels were high absent some *showing* of substantial limitation is insufficient. See Sutton, 527 U.S. at 482-83, 119 S.Ct. at 2146-47. Moreover, evidence on what "could" happen is not enough to survive summary judgment. See id. at 482, 119 S.Ct. at 2146. With respect to the activity of seeing, the evidence reflects that McPherson reported to his doctor that he was having vision

10

problems, but there has been no evidence presented to support a claim that he was substantially limited in the activity of seeing. Furthermore, Dr. Krishnamurthi testified in his deposition that, with changes in the type and dosage of his insulin, the Plaintiff's vision was improving.

McPherson argues in his response to the motion that, not only does he have an impairment that substantially limits one or more major life activities, but that he has been "regarded as" having an impairment by his former employer.[4] In doing so, the Plaintiff refers to his assignment in Washington, D.C. He related that, after he was diagnosed with diabetes, he was called into the office and told that, based on his blood sugar levels, he was not permitted to drive a truck. The company was concerned he would fall into a coma or collapse, endangering himself and others. According to the Plaintiff, at that point FedEx gave him 90 days in which to find another job as part of the company's medical leave policy under his then supervisor, Gary Aldred. It is unclear from the record before the Court what happened next. It is undisputed, however, that McPherson remained with FedEx and eventually returned to Memphis.

In order to be "regarded as" disabled, he must demonstrate that he:

(1)   Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2)   Has a physical or mental impairment that does substantially limit major life activities only as a result of the attitudes of others toward the impairment; or

(3)   Has [no impairment] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. §1630.2(1); see also Sutton, 527 U.S. at 489, 119 S.Ct. at 2149-50, 324 F.Supp.2d at 1016.

---

[4]Although the Plaintiff also mentions in his response that he had a record of disability, he offers no supporting argument therefor. Thus, the Court will not consider whether McPherson in fact had a record of disability.

11

The Plaintiff argues that he is substantially limited to the major life activity of working because he was prohibited from driving a truck. "[T]o be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 523, 119 S.Ct. 2133, 2138, 144 L.Ed.2d 484 (1999). The individual must establish "at a minimum," that he is "unable to work in a broad class of jobs or a broad range of jobs in various classes." Salim, 106 F.App'x at 459 (citing 29 C.F.R. § 1630(j)(3)(i)); Sutton, 527 U.S. at 491, 119 S.Ct. 2139). One court in this Circuit has described an action based on the premise that the plaintiff was regarded as disabled in the major life activity of working takes him "to the farthest reaches of the ADA" and that proving such a case is "extraordinarily difficult." See Ross v. Campbell Soup Co., 237 F.3d 701, 709 (6th Cir. 2001). Since McPherson was prohibited from performing only one job - driving a truck,[5] his claim under the "regarded as" provisions cannot stand. See Mohr v. Hoover Co., 97 F.App'x 620, 623 (6th Cir. 2004) (inability to perform a single, particular job - operating a forklift - did not constitute a substantial limitation in the activity of working). Moreover, any argument on behalf of the Plaintiff that he was regarded as disabled by Jacobs is not supported by the record, which suggests that, if anything, McPherson's impairment was *under*estimated by his Memphis supervisor.

Furthermore, the Plaintiff's assertion that he was substantially limited in the area of working is belied by the fact that he was working a second job during his medical leave from FedEx. In his deposition, the Plaintiff admitted that he worked at Power & Telephone Supply Company, a

---

[5] It appears from the record that, upon his return to Memphis, McPherson's management position did not require him to drive a truck. Thus, at the time he was fired, whether he could drive a truck was not an issue.

12

warehouse facility, as a clerk. When asked why he took the job, he replied that "I guess at the time I guess I just wanted to do something, because at that time I was bored being at home during the daytime, I guess, so I wanted to do something." (McPherson Dep. at 76.) He was a full-time employee and worked up to 35 hours per week depending on the needs of the business. McPherson's job duties included filing papers, answering the telephone, putting stickers on boxes and even lifting merchandise and containers. The Plaintiff worked the second job until he was laid off due to downsizing. Accordingly, the Court finds that McPherson has failed to show that he was regarded as disabled. See Plant v. Morton Int'l, Inc., 212 F.3d 929, 937 (6th Cir. 2000), reh'g and suggestion for reh'g en banc denied (July 25, 2000) (in finding plaintiff had failed to show substantial limitation, court noted that he had worked sporadically after his termination in a job requiring him to perform similar tasks).

Based on the Court's finding that the Plaintiff is not disabled and, therefore, has failed to establish a prima facie case of ADA discrimination, the motion of the Defendant for summary judgment is GRANTED. As a consequence, any motions still pending in this matter are DENIED as moot and the pretrial conference and trial are to be removed from the Court's calendar. Further, the Clerk of Court is directed to enter judgment for the Defendant.

IT IS SO ORDERED this 8th day of November, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

13

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 46 in case 2:03-CV-02006 was distributed by fax, mail, or direct printing on November 9, 2005 to the parties listed.

---

Karen W. Tyler
LAW OFFICE OF KAREN TYLER
4466 Elvis Presley Blvd.
Ste. 206-208
Memphis, TN 38116

Colby S. Morgan
FEDEX CORPORATION
3620 Hacks Cross Rd.
Third Floor, Building B.
Memphis, TN 38125--880

Barry McPherson
5730 Prince Cove
Memphis, TN 38115

Honorable J. Breen
US DISTRICT COURT